UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

J.B. ELECTRIC CO., INC. :
:
vs. : C.A. NO. 07-400 ML
:
HUNTINGTON CONTROLS, INC. :

DEPOSITION OF MICHAEL HUNTINGTON
Tuesday, July 29, 2008
10:00 a.m.
The Law Firm of Thomas A. Tarro, III
The Summit East - Suite 330
300 Centerville Road
Warwick, Rhode Island 02886

– – –

Heather A. Lussier, CSR
Capitol Court Reporting, Inc.
931 Jefferson Boulevard
Warwick, Rhode Island 02886
(401) 739-3600

APPEARANCES

For the Plaintiff:

THOMAS A. TARRO, III, ESQ.
THE LAW FIRM OF THOMAS A. TARRO, III
The Summit East - Suite 330
300 Centerville Road
Warwick, Rhode Island 02886

For the Defendant:

DAVID M. CAMPBELL, ESQ.
VISCONTI & BOREN, LTD.
55 Dorrance Street
Providence, Rhode Island 02903

ALSO PRESENT:
John Boretos
Peter Leone

8

Q. Okay. Well, let's go -- let's go to Exhibit A with regard to the document we've marked as Exhibit 1. That's the Notice of Deposition which was received by you.
MR. CAMPBELL: Next page.
Q. You were asked to bring original drawings, blueprints, plans, specifications supplied to J.B. Electric for bidding purposes on the Renaissance Hotel Project which is the subject matter of the Complaint. Do you have those with you today?
A. No. Those were on the disk.
MR. CAMPBELL: They've been provided on the disk.
Q. I've asked for the original drawings. Have you brought those with you?

9

A. No.
Q. Why not?
A. I don't have the original drawings. I believe -- I thought it said that we had 30 -- so many days from the day of notice to provide those.
Q. Where are the original drawings?
A. I don't have the original drawings. I don't know if they're in the office or not. Paul's putting that together.
Q. Okay. Did anyone indicate to you that you should bring the original drawings?
A. No. Paul said he was putting that whole package together. He's coming down here tomorrow.
Q. Okay. Well, I was under the understanding that that deposition has been continued. Are you aware of that?

A. Yes. Well, it was canceled because of a scheduling conflict. Nobody told me when it was rescheduled.
Q. Okay. Now, you understand that this Notice of Deposition was directed to you?
A. Correct.
Q. All right. And you were asked to bring the original drawings for the purpose of your deposition. Do you understand that?
A. I understand that now. Yeah.
Q. Okay. You have at the office the original drawings;



is that correct?
MR. CAMPBELL: Just for the record, Counsel, original drawings are on the disk. So I'm not really sure -- you didn't specify the format. You have the original drawings. There's nothing magical about the paper. So --
MR. TARRO: I'm asking for the original drawings, not on the digital format. I'm asking for the original drawings, the paperwork. These are the documents that were requested.
MR. CAMPBELL: Well, I guess what I'm saying, Counsel, is that original drawings can be on a disk. There's nothing different --
MR. TARRO: That's not what I'm asking for. I'm asking for --
MR. CAMPBELL: But you didn't specify you wanted the paper. So I guess from my perspective, you've got the original drawings. The original drawings are on a disk in this case. It's not always the way that you have the paper or you retain the paper. The disk is what you've got. That's what I understood you wanted. They are the original drawings represented on that disk. If you want the paper, I'll get you the paper if the paper exists in the office of Huntington.
MR. TARRO: That's what I want. I want the original drawings. Okay?



MR. CAMPBELL: You keep saying you want the original drawings. The original drawings are on the disk. They are considered original. It does not have to be paper.
MR. TARRO: Those are a digital copy of the original drawings. The original drawings are the paper drawings that are on a piece of paper that lay out the schematics. That's what I'm looking for.
MR. CAMPBELL: Okay. That's what you're

looking for, but that's not necessarily what you put in that request.

MR. TARRO: I asked for original drawings. If you didn't understand that, you could have picked up the phone. You could have called me, and I could have clarified it because I've also asked for the original Bulletin 55. Do you have that?

MR. CAMPBELL: On the disk.

Q. You don't have the original?

A. No.

Q. Do you have the original Bulletin 63?

A. No.

Q. Okay. Where is it?

MR. CAMPBELL: Which? "55" or "63"?

MR. TARRO: Are you going to keep interrupting me?

12

A. "63" -- "63" we haven't been able to locate. We have a call in to Arden Engineering to provide us a copy of "63". "55" is on the disk with all the other information.

Q. Do you have an original Bulletin 55 at your office?

MR. CAMPBELL: Objection.

A. I don't. I don't -- I couldn't answer that.

Q. Did you search for original Bulletin 55?

MR. CAMPBELL: Objection.

A. I did not.

Q. Okay. The forth response asks for the original daily time records submitted by J.B. Electric to Huntington Controls. Do you have those documents?

A. I would have to refer to Paul. Paul put -- Paul put all this together.

Q. So you don't have those documents today?

MR. CAMPBELL: Take a look through here.

A. There are time sheets from J.B. Electric.

Q. I'm asking for the original daily time records submitted by J.B. Electric to Huntington Controls, Inc.

A. The originals, no. There aren't any originals here.

Q. I'm asking you: Do you have those at your office?

A. I believe we do.

Q. Okay. You don't have them --

MR. CAMPBELL: Just for the record --

13

Q. You don't have those today here at this deposition; is that correct?

A. That's correct.
MR. CAMPBELL: Just to be clear for the record, the original daily time records, are you referring to for extras in changes or something else? Daily time records covers a fairly broad scope.
Q. I'm asking for all the original daily time records. Okay? You have those records at your office; is that correct?
A. Whatever J.B. provided us. Yes.
Q. Request Number 5, any and all documents including but not limited to memorandum, e-mails, letter correspondence, memos, etc. that reference in any way the claim asserted by Huntington Controls in its answers to interrogatories that the control wiring performed by J.B. Electric was not adequately labeled. Do you have that documentation?
A. Is that in there?
MR. CAMPBELL: I'm looking at the document request that was filed on July 16th which asks for the same thing which is what you referred to earlier that you had 30 days to produce. The documents responsive to "5", the control wiring are not in the disclosure notebook.
A. So the answer to your question is no. We do not have that with us.



Q. Okay. With regard to Item Number 6 on Exhibit A to the Notice of Deposition, any and all documents including but not limited to memorandum, e-mails, letters, correspondence and memos, etc. that refer in any way to the claim asserted by Huntington Controls, Inc. in its answers to interrogatories that plaintiff failed to provide all material required by the subcontractor. Do you have those documents that are responsive?
MR. CAMPBELL: You don't need to assume that there are such documents, and they would not be in the notebook that is in the conference room today.
Q. Do you have those documents with you today?
A. No.
Q. Item Number 7, any and all documents -- let me ask you this. With regard to Item Number 6, did you make a search of your records that would be responsive?
A. Paul is putting that whole list together.
Q. Did you?
A. Did I? No.
Q. Okay. Number 7, any and all documents including but not limited to memorandum, e-mails, letters, correspondence, memos that refer in any way to the claim asserted by

Huntington Controls, Inc. in its answers to interrogatories that J.B. Electric also failed to install control devices on



the air handling units as required by the subcontractor. Do you have the documents that are responsive to that request?
A. Not today. No.
Q. Did you make a search for those documents?
A. Did I? No. Personally, no.
Q. Did you make -- did you direct anyone to make a search for those documents?
A. Yes. Paul Milano, the vice president.
Q. And when did you direct him to make a search for those documents?
A. After we received the notice.
Q. Okay. And you understood that those documents were requested to be brought here today to this deposition?
A. My understanding was it was -- we had "X" amount of days to supply those documents.
Q. And where did you obtain that understanding from?
A. I thought I read it in the -- in one of the notices that we had --
Q. Well, look at your Notice of Deposition, and I direct you to the first page, Page 1. The last sentence on Page 1, it states, deponent is requested to bring with him the documents requested on Exhibit A attached hereto. Do you see that?
A. Is this the one dated July -- it says within 30 days



of receipt thereof.
Q. Let me see what document you're referring to. This is a Request For Production of Documents. I'm talking about a Notice of Deposition.
MR. CAMPBELL: For the record, that second Request For Production of Documents was filed on the same day and seeks the same documents.
Q. What I'm going to do is I'm going to make a photocopy of the document you've been referring to, --
A. Uh-huh.
Q. -- and we'll mark that as Exhibit Number 10.
(BRIEF PAUSE)
(Plaintiff's Exhibit Number 10 marked)
Q. I'm going to show you a document that's marked as Exhibit Number 10, and that's a photocopy of the correspondence forwarded to you by your attorney to which is

attached the Request For Production of Documents and the Notice of Deposition; is that correct?
A. That's correct.
Q. Okay. And you received that document on or about what date?
MR. TARRO: Could you have the witness answer please and not --
MR. CAMPBELL: He's pointing to the document.

17

MR. TARRO: Yes. But he's got to answer, not you.
MR. CAMPBELL: I haven't said anything. I'm just looking at the document.
MR. TARRO: I understand that, but show him the document. It's not -- it's not up to you to respond to the question.
MR. CAMPBELL: I haven't attempted to.
MR. TARRO: Well, you --
A. It's --
Q. Go ahead.
A. It's dated July 21st. So we would have received it July 22nd, July 23rd, somewhere in that area.
Q. To that document is attached -- to that document is attached the Request For Production of Documents and a Notice of Deposition; is that correct?
A. That's correct. It says under the instruction within 30 days of services hereof.
Q. If you look at the Notice of Deposition, the Amended Notice of Deposition directed to you -- you read that notice when you received it, correct?
A. That's correct.
Q. All right. And in that notice, it doesn't state any 30-day period of time; is that correct?

18

A. Not -- no. Not on this notice. It does not.
Q. And you understood when you read the Notice of Deposition that you were to bring to the deposition the documents that were identified in Exhibit A; is that correct?
A. No. That's not correct. I believe that we had the 30 days on the first notice that came in that it said within 30 days of service thereof. And I assumed that that 30 days was the time we had to compile all this information.
MR. CAMPBELL: I should have been more specific, Tom. I was out of my office from the 14th to the

18th. The 21st was my first day back. The cover letter is general. It could have been more specific. The documents are not here that you're looking for. This deponent would not have compiled and assembled them, and this deponent does not have personal knowledge about the contents of those documents. For the most part, Mr. Milano would be responsible for compiling and assembling, and Mr. Milano would have personal knowledge. So if you want to continue to find out what this deponent knows as opposed to what I didn't tell him about what to bring today, you can do so. If not, we can suspend, and we can come back.

MR. TARRO: I think we're going to have to because certainly those documents as you understand it are pertinent to this claim.

19

Q. All right. The plans, the designs, the drawings, Bulletin 55, Bulletin 63, the original time records, all of those documents are germane to this claim. You understand that, don't you, Mr. Huntington?

A. Yes. Yes.

MR. CAMPBELL: You have most of those documents already, Mr. Tarro.

MR. TARRO: I'm looking for original documents, and I stated original in the Notice of Deposition, the original documents.

Q. Do you understand I'm looking for the original documents?

A. Yes.

MR. CAMPBELL: Original paper documents?

MR. TARRO: The original documents.

MR. CAMPBELL: Original paper documents?

MR. TARRO: Yes.

MR. CAMPBELL: Contractors use E-Documents now. They use them to bid. They're considered originals. Well, if you're going to pick this argument, you're going to have to finish the argument. You have the originals, Mr. Tarro.

MR. TARRO: I am not --

MR. CAMPBELL: You have the originals on disk.

MR. TARRO: I want the original documents that they worked off at the job site.

20

Q. Do you understand, Mr. Huntington, that at the job site you don't work off the computer digital image of the prints?



J.B. Electric v. Huntington C.A. No. 07-400 ML
Reply to Defendant's objection to Motion to Amend
Exhibit #2 page 8

A. Yes.
Q. You work off a paper document, don't you?
A. That's correct.
Q. And changes are made on the paper document; isn't that correct?
A. Yes. Sometimes. Yeah.
Q. All right. Those are the documents I'm looking for. So --
MR. CAMPBELL: Do you know that you have the original paper documents?
A. I couldn't answer that.
MR. CAMPBELL: What we can do if you want is call the office and see if they have the original paper documents. If they don't have them, --
MR. TARRO: I'm going to suspend the deposition --
MR. CAMPBELL: -- then you don't have an ability to get them.
MR. TARRO: I'm going to suspend the deposition today. I'm going to ask him to compile that information. All

21

right. If he doesn't have it, he can certainly obtain it. So why don't we do that. We'll suspend the deposition now, and I'll get another date right now to reconvene. So why don't you hold on, and I'll put that on the record.

49

Q. Now, do you know what the original date for completion of construction for the project was?
A. Do I? No.
Q. You indicated that in March of 2007 that there was another request for an accelerated work schedule, correct?
A. Right. That they -- that Hensel/Phelps again said

50

they would pay overtime to complete the project.
Q. Well, they also wanted more men on the job site, correct?
A. Correct. Yeah.
Q. Okay. And they were going to change the work schedule? They were going to be working on Saturdays and Sundays, correct?
A. Correct.
Q. And they were also going to work overtime in addition working on weekends, correct?
A. Right.
MR. CAMPBELL: Objection.
Q. Go ahead.
A. Hensel/Phelps was going to pick up all what they call the premium time.
Q. And with regard to J.B. Electric, you understood J.B. Electric was going to hire additional electricians to work on the job site to meet this accelerated schedule?
A. I don't know how they were going to do it, whether they were going to pull people from other sites or hire them from the hall or --
Q. Well, you understood that J.B. Electric was going to hire additional electricians to work on the job site?
A. I was under --

51

MR. CAMPBELL: Objection. Asked and answered.
A. No. I don't know where they were getting the guys, if they were going to hire them or take them from other jobs.
Q. But you knew that they had to --
A. I knew they needed more people to finish the job.
Q. They had certain people, okay, that were working on the job site in March of 2007, correct?
A. Correct.
Q. Do you know how many electricians were working on the job site at that time?
A. No. I don't have the exact number.

Q. Okay. Do you know how many additional workers were added by J.B. Electric to work on the job site?
A. No, I don't.
Q. Okay. You indicated to J.B. Electric that you wanted them to bring in additional electricians to work on the job on the accelerated basis, correct?
A. To work -- to work -- yeah. To finish the job on time. Yeah.
Q. Well, to work on an accelerated basis?
A. Well, I think you have to define what accelerated basis is.
Q. Well, that's the word that you used. You understood that Hensel/Phelps, the general contractor wanted to



accelerate the work schedule --
A. Right.
Q. -- to complete the job --
A. That's correct.
Q. -- by a certain date?
A. And Hensel/Phelps said to do that they were willing to pick up all the premium time.
Q. And you understood that additional laborers, electricians had to be hired by J.B. Electric to work the job?
MR. CAMPBELL: Objection.
A. I don't know where they were going to get the electricians, whether they had to hire them or they're going to take them from other projects. I knew that the -- that they weren't going to do it on the 40-hour week with the people that they had.
Q. Okay.
A. And that's their responsibility to charge how many people they need to finish the project. That's why we sub out a project.
Q. Okay. But you understood that when they're -- strike that.
When the original quote was submitted by J.B. Electric, do you know for how many electricians that included?
A. I have no idea.



Q. Do you know what the schedule of the work was?
A. No. I wasn't privy to that.
Q. Do you know what the scope of the work was?
A. No.
Q. Okay. You understood that during the period of time

that J.B. Electric worked on the job site that there were
changes made to the scope of the work?
A. I did know that there were changes. Yes